LELAND D. CASSIDY, Plaintiff, *v.* CITY OF LITTLE FALLS, Defendant.

Fourth Department, November 12, 1919.

Poor Law — revival of distinction between town and county poor — when city liable for necessaries ordered for its poor.

Where the distinction between the town and county poor in the county of Herkimer was abolished by the board of supervisors, but was thereafter revived by said board, pursuant to section 138 of the Poor Law, the city

of Little Falls, which under its charter is deemed to be a town within the general laws relating to the poor, is liable to a merchant for goods furnished to a poor person who is a resident of said city even though during the time the distinction between town and county poor had been abolished the county had been solely liable for such necessaries.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Myron G. Bronner [Bronner & Ward, attorneys], for the plaintiff.*

*William S. Rhodes, City Attorney,* for the defendant

DE ANGELIS, J.:

On the 21st day of December, 1909, the distinction between town poor and county poor theretofore existing in the county of Herkimer was abolished by the board of supervisors pursuant to section 138 of the Poor Law (Consol. Laws, chap. 42; Laws of 1909, chap. 46).

On the 16th day of December, 1913, the board of supervisors of the county of Herkimer passed a resolution reviving and restoring the distinction between town poor and county poor in Herkimer county pursuant to section 138 of the Poor Law, to take effect March 1, 1914.

The defendant, City of Little Falls, is a municipal corporation within the county of Herkimer in the State of New York, incorporated and existing pursuant to and under chapter 565 of the Laws of 1895 and the several acts amendatory thereof and supplemental thereto, constituting its charter. Section 132 of the charter provides that the city of Little Falls shall be deemed to be a town within all the provisions of general laws relating to the poor, with some minor exceptions not material here, and that the overseer of the poor of the city shall possess the same power and authority and be subject to the same duties and liabilities as if the city were a town and he were the overseer of the poor thereof.

In the year 1912 one Albert Clark, of full age, became a poor person and began to receive outdoor relief which was furnished to him by the county of Herkimer through the agency of the overseer of the poor of the city of Little Falls.

For more than the period of one year immediately preceding the beginning of such relief Clark lived in and was a resident and inhabitant of the city of Little Falls and ever since has lived in and been a resident and inhabitant of the city of Little Falls. (See Poor Law, § 40, *et seq.*)

During the entire period last above mentioned there has been an officer of the county of Herkimer known as the purchasing agent, duly appointed and acting pursuant to and under chapter 496 of the Laws of 1908, as amended by chapter 495 of the Laws of 1909. This officer is authorized and empowered to make all purchases and all contracts for supplies of every name and nature for the county.

Between the 21st day of December, 1909, and the 1st day of March, 1914, it was the common practice of the overseers of the poor of the several towns and the overseer of the poor of the city of Little Falls, under the direction of the county purchasing agent, to give written orders to the plaintiff and other merchants within their respective municipalities, to deliver the merchandise mentioned in such orders for the support of the poor persons mentioned in such orders. On some of such orders, but not all, there was stamped with a rubber stamp the words " Chargeable to County." The purchasing agent had contracts with such merchants for the delivery of merchandise pursuant to such orders. It was also the practice in such county, between such dates, for merchants receiving such orders to present the same, with the bills for the merchandise furnished pursuant thereto, duly verified, to the purchasing agent of the county who thereupon caused the bills to be paid from the moneys of the county raised by taxation for that purpose.

Between the 1st day of May, 1913, and the 25th day of January, 1918, both days inclusive, the plaintiff furnished goods, wares and merchandise of the value of $282 for the outdoor support and relief of Clark pursuant to separate written orders of the overseer of the poor of the city of Little Falls. Copies of the orders appear in the record. These orders were numbered, dated, and given for specific amounts and were substantially in the same form as those issued by the overseer between December 21, 1909, and March 1, 1914.

Some of *these* orders had stamped upon them with a rubber stamp the words " Chargeable to County." The following is a copy of one of these orders:

" Send this to merchant.
" ORDER OF
" OVERSEER OF THE POOR
" CITY OF LITTLE FALLS, N. Y.

---

" No. 35                    .          May 22, 1914.

---

" L. D. CASSIDY    furnish to    ALBERT CLARK
" (Merchant's name)          (Applicant's name)
" the articles named below:

| | |
|---|---:|
| " 3 lbs. flour | $.15 |
| " 1 pk. potatoes | .20 |
| " 3 lbs. sugar | .18 |
| " 1 sk. salt | .05 |
| "         lard | .... |
| " 1 lb. butter | .35 |
| "         rice | .... |
| " 1 lb. pork | .18 |
| "         crackers | .... |
| " 2 lbs. beans | .16 |
| " ½ gal. kerosene oil | .06 |
| "         oatmeal | .... |
| " 3 lbs. corn meal | .12 |
| "         tea | .... |
| "         coffee | .... |
| "         coal | .... |
| "         wood | .... |
| " 1 box matches | .05 |

$1.50

" R. N. CASLER, *Overseer*
          " *City of Little Falls*, N. Y.

" The value of this order must not exceed $1.50 and must be furnished as indicated above.

" Notice to Merchant: This order must be preserved and will be all that is necessary to secure payment from county when presented to Purchasing Agent and properly sworn to. This order is void unless the Purchasing Agent of the county has previously contracted with merchant for supplies."

No question is raised as to the manner in which the alleged indebtedness was incurred. So that we are only called upon to determine the status of Clark as a poor person at the time the plaintiff furnished the supplies whose value he now seeks to recover. Having been a poor person whose support was chargeable to the county when Clark became such, did his status thereby become fixed, so to remain while he continued to be a poor person, notwithstanding the revival of the distinction between county and town poor in Herkimer county?

Brief reference to the history of legislation for the poor in this State will shed some light on the proper construction of section 138 of the Poor Law under which the board of supervisors acted in restoring the distinction between town poor and county poor.

Prior to 1813 several general acts and some local acts were passed by the Legislature for the relief of the poor. On the 8th day of April, 1813, an act was passed entitled " An act for the relief and settlement of the Poor " (R. L. of 1813, chap. 78; 1 R. L. 279). This act contained the provision (§ 1) " that every city and town shall support and maintain their own poor." It was amended April 5, 1817 (Laws of 1816–17, chap. 177). Pursuant to chapter 146 of the Laws of 1826 the distinction between county poor and town poor in Genesee county was abolished. Chapter 197 of the Laws of 1827 abolished the distinction between town poor and county poor in the counties of Warren and Washington. Section 9 of that act provided that the counties of Ontario, Cayuga and Herkimer might be placed under the provisions of the act if a majority of their several boards of supervisors should so determine. By chapter 155 of the Laws of 1828 the board of supervisors of any county in the State was authorized to abolish all distinction between county

poor and town poor. Upon the adoption of the Revised Statutes the act of April 8, 1813, with the amendments thereto was repealed (Laws of 1828, 2d Meeting, chap. 21, § 1, subd. 80), and the Revised Statutes, part 1, chapter 20, title 1 (1 R. S. 613 *et seq.*), occupied this field of legislation, and the general law of the State providing for the distinction between county poor and town poor was retained therein. Section 24 contained a general provision authorizing the board of supervisors of any county to abolish the distinction between county poor and town poor in its county. Sections 19, 20, 21, 22, 25, 26 and 27 contained provisions to carry out the act of abolition. (1 R. S. 619–621.) The town moneys remaining in the hands of the overseers of the poor were directed paid to the county treasurer to be applied by him towards the future taxes of the towns respectively. The provisions of these sections show conclusively that the status of those poor persons who before the act of abolition had been town poor, receiving support from the towns, immediately upon the act of abolition was changed to that of county poor. Chapter 208 of the Laws of 1843 authorized the boards of supervisors of the counties of Herkimer, Tioga and Saratoga to restore the distinction between the county poor and the town poor in their counties respectively. Chapter 176 of the Laws of 1848 authorized the boards of supervisors of the counties of Livingston, Sullivan, Broome, Cortland, Orange, Allegany, Seneca, Franklin, Onondaga and Ulster to restore the distinction between county poor and town poor in their counties respectively. Chapter 225 of the Laws of 1896, known as the Poor Law of 1896 (Gen. Laws, chap. 27), among other things, repealed title 1 of chapter 20 of part 1 of the Revised Statutes, the general provisions of the former Poor Law. Section 134 of the new law retained the general provisions of the former law for the abolition of the distinction between county poor and town poor and contained a general provision for the restoration of the distinction between county poor and town poor which was *new*. Sections 135 and 136 contained directions like those of the Revised Statutes for the disposition of the moneys of the towns theretofore raised for the town poor and not disbursed, in counties where the distinction between the county poor and town poor was abolished. (See, also, 1 R. S. 631,

§ 74.)   The provisions of these sections were re-enacted in the present Poor Law (Consol. Laws, chap. 42; Laws of 1909, chap. 46), sections 138, 139 and 140.   Section 138 was amended by Laws of 1916, chapter 379.

It will be noted that, although provision is made in sections 139 and 140 for the disposition of moneys in the hands of the overseers of the poor where the distinction between town poor and county poor is abolished, no like *express* provision is made where the distinction between town poor and county poor is revived or restored.   From this situation the defendant argues that the status of all the poor in a county at the time of the revival or restoration of the distinction between town poor and county poor having been fixed as of county poor should remain such.   I do not entertain that view.   An individual poor person could not acquire an unalienable right to a particular source of public relief.   It is entirely clear that where the distinction between town poor and county poor is abolished, the towns cease to be liable for the support of the town poor who had been receiving relief from the towns down to the time of the change, as already appears.   There is no reason why, upon the revival or restoration of the distinction between town poor and county poor, those who at the time of such revival and restoration are receiving support from the county and except for the former law would have been classified as town poor and would in fact have been town poor, should not receive their support from the towns.   And the truth is that all the legislation needed to carry out the determination of a board of supervisors to restore the distinction between county poor and town poor in its county exists, and did exist, when the board of supervisors of the county of Herkimer determined to restore the distinction between town poor and county poor and that determination took effect.   All the moneys raised for the support of the poor in a county in such a case have been raised by general taxes upon the taxpayers of the county.   The fund thus raised is a contingent fund.   (Poor Law, § 11.)   Such part thereof as needs not to be used by reason of the fact that the expense of the poor of the towns and cities of a county is to be borne by the towns and cities, is saved to the county like other contingent funds which are not used in whole or

in part. No further legislation is or was required to insure that result.

It follows from the foregoing that the plaintiff is entitled to judgment against the defendant for the sum of $282, with interest from March 6, 1918.

All concurred.

Judgment directed for the plaintiff upon the submission for the sum of $282, with interest thereon from March 6, 1918, with costs.